UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHANIE LOU GLENA,

                          Plaintiff,       **No. 1:15-cv-00510(MAT)**
                                                             **DECISION AND ORDER**
          -vs-

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                          Defendant.
_____

## INTRODUCTION

Represented by counsel, Stephanie Lou Glena ("Plaintiff") instituted this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On April 27, 2012, Plaintiff protectively filed an application for SSI, alleging disability beginning May 15, 2006. The claim was denied initially on August 28, 2012. Plaintiff filed a written request for hearing on September 26, 2012, which was held by

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Administrative Law Judge Stanley A. Moskal ("the ALJ") on November 20, 2013, in Buffalo, New York. Plaintiff appeared with her attorney and testified, as did David Sypher, an impartial vocational expert ("the VE"). The ALJ issued an unfavorable decision on June 27, 2014. (T.20-29).[2] Plaintiff's request for review was denied by the Appeals Council on July 17, 2015, making the ALJ's decision the Commissioner's final decision. Plaintiff timely filed this action.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process promulgated by the Commissioner for adjudicating disability claims.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 27, 2012, her application date. (T.22). At step two, the ALJ found that Plaintiff has the following severe impairments: anxiety, depression, alcoholism, Stage I chronic lymphocytic leukemia/small lymphocytic lymphoma ("CLL/SLL"), and chronic obstructive pulmonary disease ("COPD"). The ALJ found that Plaintiff's history of cellulitis, neck pain, and back pain were not severe impairments.

At step three, the ALJ determined that Plaintiff's impairments, considered singly or in combination, did not meet or medically equal the severity of an impairment listed at 20 C.F.R.

---

[2] Citations to "T." in parentheses refer to pages from the certified administrative transcript.

Part 404, Subpart P, Appendix 1. (T.22-24). The ALJ found that Plaintiff's COPD did not meet Listings 3.02B or 3.02B because the evidence showed normal spirometry. With regard to Plaintiff's Stage I CLL/SLL, the ALJ noted that she and has not required any treatment to date. He found that she did not meet the criteria in Listings 13.05 or 13.06 because she does not have an acute disease process and she has not undergone any antineoplastic therapy. Finally, the ALJ found that her mental impairments did not meet or medically equal the criteria of Listings 12.04, 12.06, and 12.09. He determined that she did not meet the Paragraph "B" criteria insofar as she has only mild restriction in activities of daily living; moderate restriction in social functioning; mild restriction in maintaining concentration, persistence or pace; and had not experienced any episodes of decompensation. Likewise, the ALJ determined that she did not fulfill the Paragraph "C" criteria of those listings.

The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b),[3] except that she can lift and carry up to ten pounds frequently and 20 pounds occasionally; can stand and walk up to six hours and sit up to six hours; has no postural,

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and requires a good deal of walking/standing or sitting with pushing and pulling of arm or leg controls. 20 C.F.R. § 416.1567(b).

visual, communicative, or environmental limitations other than the need to avoid concentrated exposure to fumes, gases or other respiratory irritants; can understand and follow simple directions and instructions; can perform simple tasks independently; can maintain attention, concentration, and a regular schedule, and learn new tasks; can deal appropriately with stress; and is mildly impaired in making appropriate decisions, relating adequately with others, and performing complex tasks independently, where stressors occur on an occasional basis (defined as one-third of the workday). (T.24).

At step four, the ALJ determined that Plaintiff has no past relevant work; was 45 years-old on the application date, making her a younger individual age 18-49; and has a limited education (tenth grade) and is able to communicate in English.

At step five, the ALJ relied on the VE's testimony to find that an individual of Plaintiff's age, and with her education, work experience, and RFC, could perform the requirements of representative occupations such as (1) Electrical Assembler, DOT Code 729.687-010, a light, unskilled position with an SVP of 2, with 37,562 positions in the national economy; (2) Mail Sorter, DOT Code 222.687-022, a light, unskilled position with an SVP of 2, with 39,407 positions in the national economy; and (3) Ticket Taker, DOT Code 344.667-010, a light, unskilled position with an SVP of 2, with 36,353 positions in the national economy.

Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, since the date the application was filed.

## DISCUSSION

### I. Failure to Properly Weigh Treating Nurse Practitioner's Opinions

Plaintiff primarily argues that the ALJ failed to properly assess the opinions provided by Family Nurse Practitioner Michael J. Ostolski ("FNP Ostolski"), Plaintiff's primary care provider.

On February 8, 2013, FNP Ostolski completed a medical examination for employability assessment, disability screening, and alcoholism/drug addiction determination. (T.574-75). FNP Ostolski opined Plaintiff was "very limited" in lifting, carrying; pushing, pulling, bending; and stairs and other climbing; and "moderately limited" in walking, standing, sitting, seeing, hearing, an speaking. With regard to Plaintiff's mental functioning, FNP Ostolski indicated that Plaintiff was "very limited" in appearing able to function in a work setting at a consistent pace; and "moderately limited" in understanding and remembering instructions; carrying out instructions; maintaining attention/concentration; and making simple decisions. According to FNP Ostolski, "all work conditions" were contraindicated and was expected to last permanently. He recommended that Plaintiff be referred to rehabilitation for her alcohol abuse.

On October 30, 2012, FNP Ostolski completed a physical RFC questionnaire. (T.536-40). He noted that he treated Plaintiff every two months and listed her diagnoses as: 724.4 (thoracic or lumbar spine radiculopathy); 496 (COPD); and 208.00 (leukemia). Her prognosis was "12+ months but stable with treatment." FNP Ostolski listed Plaintiff's symptoms as "pain upper back r/t [related to] lifting, aggravated anxiety." Clinical findings and objective signs included a cervical spine X-ray from September 21, 2012, that stated "mild DDD [degenerative disc disease] and facet arthritis from C5-C7" and "stage [I] CCL/SLL treated at Roswell Park." FNP Ostolski noted that Plaintiff had not received treatment for "RPCI" [sic] due to its early stage and slow progression, and also noted Plaintiff's condition caused extreme fatigue and aggravated anxiety. According to FNP Ostolski, Plaintiff's experience of pain or other symptoms were severe enough to occasionally interfere with attention and concentration needed to perform even simple work tasks, and that she was incapable of even "low stress" jobs. With regard to physical limitations, he opined that Plaintiff could walk for only 30 to 45 minutes at most without resting or having severe pain; could sit for only 45 minutes at a time; could stand for 15 to 20 minutes at a time; could sit for about 4 hours in an 8-hour workday; and could stand/walk for about 2 hours in an 8-hour workday. He indicated that she required 5-minute breaks every 90 minutes to walk around, as well as an at-will sit-stand-walk

option; and 15- to 30-minute unscheduled breaks during an 8-hour workday every few days. FNP Ostolski opined that Plaintiff could occasionally lift and carry less than 10 pounds; rarely lift and carry 10 pounds; occasionally look down, turn her head right or left, look up, or hold her head in a static position; occasionally twist or climb stairs; frequently stoop (bend) or crouch/squat; and rarely climb ladders. FNP Ostolski stated that Plaintiff's impairments would likely produce "good days" and "bad days" and that she would likely be absent from work more than four days a month due to her impairments. He noted that March 2012 was the earliest date that the descriptions of symptoms and limitations in his questionnaire applied.

In his decision, the ALJ gave FNP Ostloski's opinion "little weight." (T.27). The ALJ explained that Plaintiff "testified to greater capabilities than those opined by [FNP] Ostloski[,]" and "such significant limitations are not supported by the generally benign physical examinations documented within the treatment notes[.]" (Id. (citing T.542-51)).

Nurse practitioners are defined as "other sources" under the Regulations; they do not constitute "acceptable medical sources" entitled to the presumption of deference under the treating physician rule. E.g., Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (unpublished opn.); SSR 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). As a general rule, opinions from "other

sources" are not entitled to controlling weight. See, e.g., Mongeur v. Heckler, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983) ("Inasmuch as Nurse Laro did treat Mongeur on a regular basis, her opinion is entitled to some extra consideration, but the diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician."). Nevertheless, SSR 06-3p recognizes that "other source" opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-3p, 2006 WL 2329939, at *3. SSR 06–03p states that the same factors used in evaluating the opinions of "acceptable medical sources" can be used to evaluate the opinions of "medical sources who are not 'acceptable medical sources,'" although "[n]ot every factor for weighing opinion evidence will apply in every case." Id. at *4.

As noted above, the ALJ assigned FNP Ostolski's opinions little weight because he found them to be inconsistent with Plaintiff's own testimony and statements, as well as inconsistent with FNP Ostolski's contemporaneous treatment notes. (T.24). The consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an "other source." SSR 06-3p, 2006 WL 2329939, at *4 (citing 20 C.F.R. § 416.927(d)). These conclusions are supported by substantial evidence.

Plaintiff relies on selected portions of her testimony at the hearing, i.e., that she was limited to standing for one hour, walking for 30 minutes, and not sitting at all on bad days. (T.46-47). However, Plaintiff has cherry-picked testimony supportive of her claims, and has omitted her admission that "on a good day, [her ability to stand] was all right," she could walk "maybe a half hour" at a time before her back hurt, and that she "d[id]n't usually have a problem sitting" and she only had problems sitting "probably three or four times in the last month." (T.46-47). Plaintiff also stated that she was able to mop the floor and vacuum, but she might have to stop to take a short break in the middle of the task. (T.55-56). In addition, on July 8, 2013, Dr. Suman Majumdar and Dr. Seema Bhat, Plaintiff's oncologists, noted that

> [s]ince the last visit, [Plaintiff] has been doing fairly well. She has a fair energy level as well as appetite. Her weight has been stable. [Plaintiff] states that she sleeps well. She is able to carry out her daily usual activities without significant limitation. She is working in the house most of the time. [Plaintiff] denies any new lumps or bumps on her body. She denies any fever, chills, chest pain, shortness of breath, abdominal pain, nausea, vomiting, change in her bowels or urination. [Plaintiff] still smokes about 1/2 to 1 pack per day. Otherwise, there are no other concerns.

(T.515). As the Commissioner argues, Plaintiff's testimony and statements to her providers indicate that her restrictions were considerably less than FNP Ostolski's opinion suggested.

-9-

Similarly, substantial evidence supports the ALJ's conclusion that FNP Ostolski's opinions were inconsistent with his examination findings. Plaintiff cites to what she describes as "significant examination results," (Plaintiff's Memorandum of Law ("Pl's Mem.") at 25-26, "including diminished breath sounds, scattered inspiratory wheezing, and enlarged lymph nodes." (Id. (citations to record omitted)). While there are several reports of "slightly decreased breath sounds," (T.240, 250, 551), virtually all of the notes indicate that Plaintiff's lungs are "clear to auscultation bilaterally," without wheezes, rales, or rhonchi. (See T.240, 250, 262, 414, 494, 497, 502, 508, 516, 557). At the visit in February 2013, where it does not note that Plaintiff's lungs are clear to auscultation, Plaintiff denied shortness of breath at rest or on exertion, denied a cough, and denied wheezes. (T.551). At the other visit, on March 6, 2012, the provider indicated that no rales or rhonchi were appreciated upon auscultation. (T.250).

Plaintiff also cites various findings by her providers of enlarged lymph nodes as indicative of greater functional limitations. Some examination notes, however, state that there is no observable axillary lymphadenopathy, and no cervical or supraclavicular lympadenopathy. (E.g., T.250). While a January 2013 CT scan showed that was some lymph node enlargement, her oncologists noted that the "lymph nodes were very small and did not appear to be compressing or interfering with organ function."

(T.515). In short, Plaintiff's providers have not described any significant symptomatology or functional limitations due to the enlarged lymph nodes.

Plaintiff also cites to treatment notes describing fatigue as corroborating the extreme limitations assigned by FNP Ostolski. However, a number of FNP Ostolski's own treatment notes recording his reviews of Plaintiff's systems do not mention fatigue. (T.238-39, 240-41, 242-43). At times she complained of fatigue to her oncologists, but said she was "still able to carry out day to day living," although she "finds difficulty with this. . . ." (T.257). There were no notable findings on examination, and her oncologists did not believe that her "vague complaints" of "fatigue, intermittent chest pain, shortness of breath on laying [sic] flat" were attributable to any pathology in the chest; it was "unlikely that there would be significant lymphadenopathy" given that her blood work had been "quite stable" for a year and her March 2012 PET scan did not show any abnormality in the chest. (T.497-98). Thus, the notations of fatigue were based on Plaintiff's subjective complaints, rather than objective findings on examination; as fact-finder, the ALJ was entitled to weigh the credibility of Plaintiff's statements about her symptoms.

**II. RFC Unsupported by Substantial Evidence**

Relatedly, Plaintiff contends that since the ALJ "rejected the only physical medical opinions of record" it "logically follows

that the ALJ could have only relied upon his lay opinion to formulate his RFC finding[.]" (Plaintiff's Reply ("Pl's Reply") at 3-4). Plaintiff correctly points out that district courts in this Circuit have consistently held that "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the ALJ "may not make the connection himself." Wilson v. Colvin, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (quoting Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008); internal quotation omitted in original)); see also, e.g., Jermyn v. Colvin, No. 13-CV-5093, 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of these medical sources assessed [the claimant]'s functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination."). Nonetheless, these courts have recognized that "under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, 'an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment[.]'" Wilson v. Colvin, 2015 WL 1003933, at *21 (quoting House v. Astrue, No. 5:11-CV-915(GLS), 2013 WL 422058 at *4 (N.D.N.Y. Feb. 1, 2013); internal quotation omitted in original; further citations omitted).

Here, Plaintiff has several severe and chronic impairments. However, her treatment providers' statements and the actual treatment she has received do not reflect disabling functional impairments. Her oncologists have stated that her leukemia is stable, and described her complaints of fatigue as "vague" and not likely to be attributable to any diagnosed disease process. In fact, they recommended that, in light of her complaints of daytime fatigue and her excessive snoring, she be evaluated for obstructive sleep apnea, but it does not appear that she has done so. As for her anxiety and depression, she has not sought treatment with any mental health specialists. Courts have found that a claimant's receipt of only conservative treatment, or the decision not to seek treatment, can undermine the credibility of a claimant's subjective complaints. See, e.g., Lovell v. Colvin, 137 F. Supp.3d 347, 354 (W.D.N.Y. 2015) (finding that claimant's "particularly conservative medical treatment for both his back condition and psychological disorder indicates that [he] is not as restricted as he claims"; claimant "conceded that he discontinued weight treatment, is not seeing any specialist for his back, and is not seeking any special mental health treatment"). Although it would have been better practice for the ALJ to seek a consultative physical examination, the Court cannot find that the ALJ committed legal error since this is one of those situations where the medical evidence, combined with Plaintiff's own statements, indicates relatively mild physical

impairment, allowing the ALJ to make an RFC assessment without an expert medical opinion. See, e.g., Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) ("[W]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment. But when . . . a claimant has sufficiently put her functional inability to perform her prior work in issue, the ALJ must measure the claimant's capabilities, and to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.") (internal citation and quotation marks omitted). Ultimately, the Court finds substantial evidence to support the Commissioner's decision, and therefore it must be upheld. See, e.g., Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982) ("[A] factual issue in a benefits proceeding need not be resolved in accordance with the preponderance of the evidence, and a factual determination by the [Commissioner] must be given conclusive effect by the courts if it is supported by 'substantial evidence.'") (quotation omitted).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. Defendant's motion for judgment on the pleadings is

granted, and Plaintiff's motion for judgment on the pleadings is denied.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca
———————————————
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   February 6, 2018
         Rochester, New York.